# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 21, 2012

———————

No. 12-60704

———————

Lyle W. Cayce
Clerk



STATE OF MISSISSIPPI, ex rel Jim Hood, Attorney General,

Plaintiff - Appellee

v.

AU OPTRONICS CORPORATION; AU OPTRONICS CORPORATION
AMERICA, INCORPORATED; CHI MEI CORPORATION; CHIMEI
INNOLUX CORPORATION, formerly known as Chi Mei Optoelectronics
Corporation; CHI MEI OPTOELECTRONICS USA, INCORPORATED,
formerly known as International Display Technology USA, Incorporated;
CMO JAPAN COMPANY, LIMITED, formerly known as International
Display Technology, Limited; HANNSTAR DISPLAY CORPORATION;
HITACHI, LIMITED; JAPAN DISPLAY EAST, INCORPORATED; HITACHI
ELECTRONIC DEVICES (USA); LG DISPLAY COMPANY, LIMITED,
formerly known as LG Phillips LCD Company, Limited; LG DISPLAY
AMERICA, INCORPORATED, formerly known as LGD LCD America,
Incorporated; SAMSUNG ELECTRONICS COMPANY LTD; SAMSUNG
SEMICONDUCTOR, INCORPORATED; SAMSUNG ELECTRONICS
AMERICA, INCORPORATED; SHARP CORPORATION; SHARP
ELECTRONICS CORPORATION; TOSHIBA CORPORATION; TOSHIBA
MOBILE DISPLAY COMPANY, LIMITED, formerly known as Toshiba
Matsushita Display Technology Company, Limited; TOSHIBA AMERICA
ELECTRONIC COMPONENTS, INCORPORATED; TOSHIBA AMERICA
INFORMATION SYSTEMS, INCORPORATED,

Defendants - Appellants

———————

Appeal from the United States District Court
for the Southern District of Mississippi

———————

No. 12-60704

Before JOLLY, CLEMENT, and ELROD, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Appellants, manufacturers and distributors of liquid crystal display ("LCD") panels, jointly removed this case to federal district court on the grounds that (1) the action was a "class action" under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(1)(B), or (2) the action was a "mass action" under the CAFA, § 1332(d)(11)(B). The State of Mississippi, Appellee, then moved to remand the case to state court, and the district court granted the motion. Because we find that the suit qualifies as a mass action under the CAFA, we find removal to be proper. Accordingly, we REVERSE the district court's remand order and REMAND for further proceedings.

I.

Ordinarily, a district court's remand order is not appealable, *see* 28 U.S.C. § 1447(d); however, there is a statutory exception to this rule that grants federal appellate courts discretionary jurisdiction to review remand orders in actions that are removed under the CAFA. *See* 28 U.S.C. § 1453(c). We review *de novo* a district court's order remanding an action that was removed pursuant to the CAFA. *Admiral Ins. Co. v. Abshire*, 574 F.3d 267, 272 (5th Cir. 2009).

II.

Under the CAFA, removal of a suit to federal court is proper if the suit qualifies as a "class action" or a "mass action." *See* 28 U.S.C. § 1453(b); 28 U.S.C. § 1332(d)(11)(A). Our analysis begins by considering whether Mississippi's suit against the LCD manufacturers qualifies as a "class action," a question that can be answered quickly in the negative. Under the relevant provision, a class action is defined as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Because Mississippi did

2

No. 12-60704

not bring this suit under Rule 23 or a rule of judicial procedure and because Mississippi state law explicitly prohibits class actions, *see Am. Bankers Ins. Co. of Fla. v. Booth*, 830 So. 2d 1205, 1214 (Miss. 2002) ("[T]he rule is that Mississippi does not permit class actions, even equitable class actions in chancery court."), the only question is whether the suit is brought under a state statute "similar" to Rule 23. This suit was brought under the Mississippi Consumer Protection Act ("MCPA"), Miss. Code Ann. § 75-24-1 *et seq.*, and the Mississippi Antitrust Act ("MAA"), Miss. Code Ann. § 75-21-1 *et seq.* The MCPA explicitly forbids class actions, *see* Miss. Code Ann. § 75-24-15(4), and the MAA does not require that suits brought by the State satisfy any requirements that resemble the adequacy, numerosity, commonality, and typicality requirements of class action lawsuits under Rule 23, *see* Miss. Code Ann. § 75-21-7. It is thus clear that neither the MCPA nor the MAA, the statutes under which Mississippi brings the present suit, are "similar" to Rule 23. Accordingly, we hold that the district court did not err in finding that the suit does not qualify as a "class action" under the CAFA.

### III.

This conclusion brings us to the more difficult question: whether this suit qualifies as a "mass action" under the CAFA. Under the terms of the statute, a mass action is defined as a civil action in which (1) monetary relief claims of (2) 100 or more persons (3) are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact and (4) include an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(d)(11)(B)(i). It is undisputed that the present suit involves "monetary relief" claims, *see* Compl. 54, ¶¶ 2, 3, and that the relief sought satisfies the amount in controversy requirement. Therefore, the decisive question is whether the suit involves the claims of "100 or more persons." If so, the suit is a mass action, and removal is proper.

No. 12-60704

In *Louisiana ex rel. Caldwell v. Allstate Insurance Company*, we first considered the application of the mass action provision to a suit filed by a state attorney general on behalf of a subset of injured citizens. 536 F.3d 418, 429-30 (5th Cir. 2008). *Caldwell* instructs us to pierce the pleadings and look at the real nature of a state's claims so as to prevent jurisdictional gamesmanship. *See id.* at 424-25, 429 ("It is well-established that in determining whether there is jurisdiction, federal courts look to the substance of the action and not only at the labels that the parties may attach . . . . This court has recognized that defendants may pierce the pleadings to show that the claim has been fraudulently pleaded to prevent removal." (citations and inset quotation marks omitted)). The *Caldwell* claim-by-claim approach contrasts with other circuits that look to a state's complaint "as a whole" and then subjectively determine if the state alone is the real party in interest. *See, e.g., Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 670 (9th Cir. 2012); *LG Display Co., Ltd. v. Madigan*, 665 F.3d 768, 774 (7th Cir. 2011). *Caldwell*, binding precedent on this court, effectively defined "persons" in the mass action context to be the real parties in interest as to the respective claims. *See Caldwell*, 536 F.3d at 424-25, 429. We follow its approach.

The real parties in interest in Mississippi's suit are those more than 100 persons who, "by substantive law, possess[] the right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." *Richards v. Reed*, 611 F.2d 545, 546 n.2 (5th Cir. 1980) (inset quotations omitted); Charles Alan Wright & Mary Kay Lane, LAW OF FEDERAL COURTS 492 (6th ed. 2002). We find that the real parties in interest are numerous – far in excess of 100. Contrary to the State's assertions, Mississippi is thus *not* the sole party in interest. Instead, the State (as a purchaser of LCD products) *and* individual citizens who purchased the products within Mississippi possess "rights sought to be enforced." We have several bases for this conclusion.

4

No. 12-60704

First, the complaint: When the State sued the LCD manufacturers, its claim was that the manufacturers had engaged in a conspiracy to fix prices for LCD panels and that their conduct artificially inflated prices, which harmed the consumers who were forced to pay higher prices. In its complaint, the State includes a series of diverse statements about the nature of the injury involved. At times, it seems to be arguing the injury is "generalized harm" to the State as a whole. *See* Compl. 2, ¶ 1 ("[T]he State of Mississippi has a quasi-sovereign interest in the direct and indirect effect of defendants' illegal conspiracy on the state's economy and the citizens' economic condition."); Compl. 51, ¶ 194(g) ("The economy of the state of Mississippi has been damaged."). At other times, the Complaint indicates the injury it seeks to remedy with money damages is the injury suffered by the purchaser consumer. *See* Compl. 38, ¶ 145 ("Defendants' conspiracy to raise . . . the price of LCD panels at artificial levels resulted in harm to Plaintiff *and other indirect-purchaser consumers in Mississippi . . .*") (emphasis added); Compl. 44, ¶ 169 ("[D]efendants have passed through . . . to *their customers* 100% of the supra-competitive price increases that resulted from the defendants' conspiracy . . .") (emphasis added); Compl. 51, ¶ 194(f) ("Plaintiff *and other Mississippi indirect purchasers* have paid supra-competitive, artificially inflated prices for LCD products.") (emphasis added); Compl. 54, ¶ 3 (Plaintiff is bringing this action "*on behalf of Mississippi residents . . .*") (emphasis added). We think the variety of allegations demonstrate that the real parties in interest include not only the State, but also individual consumers residing in Mississippi.

Second, the state statutes: Neither the MCPA nor the MAA, the statutory bases of the State's suit, give the State sole authority to recover for particularized injuries suffered by consumers. The MCPA gives the State authority to seek injunctive relief and civil penalties, *see* Miss. Code Ann. §§ 75-24-9; 75-24-19(1)(b), and may indeed be interpreted as giving the State authority

5

to seek restitution for its own injury, *see* Miss. Code Ann. § 75-24-11. However, no provision of the MCPA gives the State authority to enforce claims for injuries *suffered by others*. In other words, the statute does not authorize public collection of private damages. Similarly, the MAA allows the State to sue for injunctive relief and civil penalties, *see* Miss. Code Ann. §§ 75-21-1; 75-21-7, but not for restitution for injuries suffered by parties other than the State, *see* §§ 75-21-9; 75-21-37. To be sure, there is one unpublished Mississippi state case (from a chancery trial court) that lends support, under § 75-24-11, for the proposition that a court may "restore" damages to an individual for a particularized injury, and also to the state on the basis of some generalized harm. *See Miss. ex rel. Hood v. BASF Corp.*, No. 56863, 2006 WL 308378 (Miss. Ch. Jan. 17, 2006). But even if *BASF Corporation* were a more authoritative precedent, it cannot be denied that the case before us is distinguishable; the crucial question before us was not dealt with by the *BASF Corporation* court – namely, who are the real parties in interest? Our case involves generalized and individual harms, which demonstrate the real parties in interest are both the State and consumers. In short, *BASF Corporation* does not provide the State with the power it seeks to assert "ownership" over all individualized claims in the name of the State.

Third and finally, common law *parens patriae* authority: Even assuming *arguendo* that the State has *parens patriae* standing to bring the claims here (an issue that we do not decide), that standing does not change the fact that Mississippi is acting, not in its *parens patriae* capacity, but essentially as a class representative. Although the relevant statutory provision does not appear on the face of the complaint, we note that Mississippi law gives the state attorney general "powers at common law." Miss. Code Ann. § 7-5-1. The State argues that *parens patriae* authority under common law allows the attorney general to bring the current suit, which, as we have seen, involves alleged state injury based on harm suffered by individual claimants. This argument fails to account

6

for the precise nature of the injury in this case and thus also fails to establish the State as the sole party in interest. As a general background principle, *Caldwell* reminds us that there are limitations on states' *parens patriae* authority. 536 F.3d at 425-28 ("[I]t is clear that . . . there are some limitations [on *parens patriae* actions], particularly when a state is seeking to recover damages for alleged injuries to its economy."). The Supreme Court, for example, has stated that when a state pursues the interests of a private party, the state is not asserting its sovereign interest, and the state remains only a nominal party. *Snapp v. Puerto Rico*, 458 U.S. 592, 602 (1982). That directive may apply here, where Mississippi is pursuing the interests of LCD purchasers. And even ignoring the Supreme Court and *Caldwell*'s caveats regarding the over-extension of *parens patriae* to suits to which that concept should not attach, two additional considerations demonstrate that the State is not the sole party in interest.

Mississippi law clearly prohibits double recovery for the same harm to respective class members. *See City of Jackson v. Estate of Stewart ex rel. Womack*, 908 So.2d 703, 711 (Miss. 2005). Thus, the state cannot recover for the injury to the consumers and still preserve the right of the consumers to recover, a right that the consumers clearly have under the statutes pursuant to which the suit is brought. *See* Miss. Code Ann. §§ 75-24-15; 75-21-9. In short, we have been directed to no statutory or common law that permits the State to extinguish the right and remedy the consumer has for his injury. There is, finally, the all too troubling suggestion by the plaintiff that Mississippi could obtain restoration for harm to individual citizens, yet keep that money for itself. We think that consideration, coupled with the reasons provided above, is enough to find against the State having *carte blanche* to recover for others' injuries under common law *parens patriae* authority.

After analyzing the complaint, the relevant statutes, and the *parens patriae* authority of the State, we hold that the real parties in interest in this

suit include both the State and individual consumers of LCD products. Because it is undisputed that there are more than 100 consumers, we find that there are more than 100 claims at issue in this case. The suit therefore meets the CAFA definition of a "mass action." *See* 28 U.S.C. § 1332(d)(11)(B)(i).

## IV.

This conclusion alone, however, does not yield a final result. The CAFA contains a number of disqualifying exceptions to the term "mass action." Of these, the "general public" exception is relevant here. It provides that a suit is not a mass action if "all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action." 28 U.S.C. § 1332(d)(11)(B)(ii)(III). But this public exception does not exempt this case from the CAFA and federal jurisdiction. The requirement that "all of the claims" be asserted on behalf of the public is not met here. As discussed above, individual consumers, in addition to the State, are real parties in interest, so there is no way that "all of the claims" are "asserted on behalf of the general public." *Accord Mississippi ex rel. Hood v. Entergy Mississippi, Inc.*, No. 3:08cv780, 2012 WL 3704935, at *15 (S.D. Miss. Aug. 25, 2012) (A "finding that the State has brought [an] action in its representative capacity to recoup restitution for individual[s] . . . precludes application of the general public exception.").

We do, however, acknowledge the concern that finding the general public exception inapplicable here may render such statutory exception a dead letter (because finding a suit to be a mass action negates the possibility of the exception applying), and we welcome congressional clarification of this issue.[1]

---

[1] The general public exception here, in the development of the law, has become somewhat problematical in the sense it reflects statutory surplusage when the State brings consumer-related actions such as the one before us today. *See* Antonin Scalia & Bryan A.

No. 12-60704

Nevertheless, the argument that our finding vitiates the application of the exception must yield to our responsibility to apply the unambiguous, express language of a statute as written. *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998). Here, doing precisely that (i.e., finding a suit to be a mass action because "monetary relief claims of 100 or more persons" are at issue) precludes us from finding that the general public exception applies.

V.

At its core, this case practically can be characterized as a kind of class action in which the State of Mississippi is the class representative. By proceeding the way it has, the plaintiff class and its attorneys seek to avoid the rigors associated with class actions (and avoid removal to federal court). *See generally, Waltzing through a Loophole: How Parens Patriae Suits Allow Circumvention of the Class Action Fairness Act*, 83 U. Colo. L. Rev. 549 (2012). Because this suit is a mass action under the terms of the CAFA, removal is proper.[2]

The judgment of the district court is therefore REVERSED, and the case is REMANDED for further proceedings.

REVERSED and REMANDED.

---

Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (1st ed. 2012) (discussing the "surplusage canon" of construction, which provides that "[i]f possible, every word and every provision is to be given effect . . . . None should be ignored. None should be given an interpretation that causes it . . . to have no consequence" (emphasis added)). If a court such as ours decides that the case must be considered on a "claim-by-claim" basis and is, therefore, a mass action, it has necessarily decided that not *all* of the claims are claims of the State and the public exception has no relevance. On the other hand, if, as other circuits have held, these cases' complaints should be evaluated "as a whole," and not on a "claim-by-claim" basis, such a decision means that the case is not a mass action because the State is the sole party in interest. Consequently, the public exception has no application. Thus, under either scenario, the public exception becomes statutory surplusage.

[2] Nothing we have said denies the State of Mississippi the right to proceed with this case. It will simply proceed in federal, not state, court.

No. 12-60704

JENNIFER WALKER ELROD, Circuit Judge, concurring in the judgment:

I concur in the judgment because the majority opinion is a fair application of our binding precedent, namely *Louisiana ex rel. Caldwell v. Allstate Insurance Co.*, 536 F.3d 418 (5th Cir. 2008). I write separately, however, to express my concerns with *Caldwell*. *Caldwell*'s claim-by-claim approach is problematic when applied to CAFA's "mass action" provision in *parens patriae* suits such as the instant case.[1]   Moreover, and just as troubling, applying *Caldwell*'s reasoning to CAFA's general public exception may render the exception a dead letter in this circuit. We should reconsider *Caldwell* and correct our course in this area of the law.

We have jurisdiction over this case only if it is a "class action" or a "mass action" under CAFA. For the reasons stated in the majority opinion, this is not a "class action." The central issue, then, is whether Mississippi's lawsuit is a "mass action." CAFA defines that term as:

> [A]ny civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdiction amount requirement under [28 U.S.C. § 1332(a)].

---

[1] I disagree with the majority opinion's veiled assertion that this may not be a *parens patriae* suit because "Mississippi is pursuing the interests of LCD purchasers." In its complaint, Mississippi identified a valid quasi-sovereign interest in preventing illegal antitrust conduct prohibited under MAA and MCPA. The facts in Mississippi's complaint also show that it sought restitution based, at least in part, on generalized harm to the Mississippi economy caused by Appellants' price-fixing scheme. The LCD consumers may be real parties in interest under *Caldwell*'s approach but that does not eviscerate Mississippi's asserted quasi-sovereign interest in the restitution claim. Moreover, the caveats to *parens patriae* authority that the majority opinion references apply only when the state is a nominal party in interest. The majority opinion never states that Mississippi is merely a nominal party in interest; to the contrary, it recognizes that "the real parties in interest in this suit include both the State and individual consumers of LCD products." Furthermore, unlike in *Caldwell*, where the damages were to go to specific policyholders, Mississippi asserted both in its complaint and at oral argument that it would retain any restitution damages.

28 U.S.C. § 1332(d)(11)(B)(i).  In *Caldwell*, we considered the application of this provision to a *parens patriae* suit.

As the majority opinion explains, *Caldwell* essentially defined "persons" in the mass action context as the real parties in interest with respect to each claim in the suit.  *See* 536 F.3d at 424, 429.  In that case, Louisiana sued several insurance companies for conspiring to suppress competition and sought, among other things, treble damages on behalf of its citizens.  *Id.* at 422–23.  The defendants removed the case to federal court, "argu[ing] that although labeled *parens patriae*, th[e] case [was] in substance and fact a . . . 'mass action'" under CAFA.  *Id.* at 423.  We evaluated Louisiana's suit on a claim-by-claim basis, rather than as a whole.  *Id.* at 429–30.  Using this approach, we concluded that Louisiana consumers were the real parties in interest with respect to the treble damages claim; therefore, the suit involved the monetary claims of 100 or more persons and (because it also met the other statutory requirements) was a mass action.  *Id.*

Here, as the majority opinion shows, applying the claim-by-claim approach leads to the conclusion that Mississippi consumers are the real parties in interest with respect to the state's restitution claim, so this is a "mass action" under CAFA.[2]  This result is the exact opposite of the outcome in many other

_____

[2] The majority opinion reaches this result using the claim-by-claim approach from *Caldwell*, but there are notable differences between Louisiana's claims in *Caldwell* and Mississippi's claims here.  In *Caldwell*, Louisiana sued under the Louisiana Monopolies Act, which provided that "*any person* who is injured in his business or property" under the Monopolies Act "shall recover[] [treble] damages."  536 F.3d at 429 (emphasis added) (quoting La. Rev. Stat. § 51:137).  Because the Louisiana statute contemplated individual enforcement, the court reasoned that "the policyholders, and not the State, [were] the real parties in interest."  *Id.* (citation omitted); *see also id.* at 430 (concluding that there was "no reason to believe" that the policyholders were not the real parties in interest "given that the purpose of antitrust treble damages provisions [is] to encourage private lawsuits by aggrieved individuals for injuries to their businesses or property" (citing *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 262 (1972)).  Here, Mississippi sued under MAA and MCPA, which specifically authorize the Attorney General to sue on behalf of the general public for violations of the respective statutes.

No. 12-60704

similar lawsuits around the country.[3] That so many other courts are reaching a different result in cases that involve similarly-situated litigants and nearly identical claims suggests that we should consider whether we have staked out the correct position. I believe we have not.

I.

As an initial matter, I agree with Judge Southwick's dissenting opinion in *Caldwell*. Judge Southwick would have ordered remand of Louisiana's suit to state court because its complaint did not "on its face" present a class or mass action. *Caldwell*, 536 F.3d at 436 (Southwick, J., dissenting). In reaching that conclusion, Judge Southwick acknowledged two important principles: (1) "the plaintiff is the master of his complaint," and (2) "[d]oubts about propriety of

---

*See* Miss. Code Ann. § 75-21-37 (providing direct statutory authority for Mississippi "to enforce civil features of the antitrust laws . . . at law or in equity"); *id.* § 75-24-19(1)(b) (giving the attorney general direct statutory authority "[to] recover on behalf of a state a civil penalty in a sum not to exceed [$10,000] per violation"). In addition, the Mississippi Attorney General has "the powers of the Attorney General at common law." *Id.* § 7-5-1. Those powers include "the right to institute, conduct and maintain all suits necessary for the enforcement of the laws of the State, preservation of order and the protection of public rights." *Gandy v. Reserve Life Ins. Co.*, 279 So. 2d 648, 649 (Miss. 1973) (citations omitted). Simply put, this case turns on different facts and law than did *Caldwell*.

[3] Several other states' attorneys general and private plaintiffs filed actions against the makers of LCD flat panels based on the same alleged conduct that forms the basis for this suit. *See, e.g.*, *LG Display Co., Ltd. v. Madigan*, 665 F.3d 768 (7th Cir. 2011); *Illinois v. AU Optronics Corp.*, 794 F. Supp. 2d 845 (N.D. Ill. 2011); *South Carolina v. AU Optronics Corp.*, No. 3:11–CV–731, 2011 WL 4344079 (D.S.C. Sept. 14, 2011). These cases essentially fall into two groups. Some were transferred to an MDL court in the Northern District of California. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, 2011 WL 560593, at *1 (N.D. Cal. Feb. 15, 2011). Others, however, remained in the district courts to which they were removed—these cases were first filed in state court and involved states' attorneys general asserting only state law claims against the LCD defendants. *See, e.g.*, *South Carolina*, 2011 WL 4344079, at *2. The MDL court handling the first group of cases has examined states' interests in the actions "as a whole" when deciding real-party-in-interest questions. *See In re TFT-LCD*, 2011 WL 560593, at *3–4. The district courts dealing with the second set of cases have done the same, consistently remanding *parens patriae* suits back to state court. *See, e.g.*, *Illinois*, 794 F. Supp. 2d at 859; *South Carolina*, 2011 WL 4344079, at *2. *But see Mississippi ex rel. Hood v. Entergy Miss., Inc.*, No. 3:08-CV-780, 2012 WL 3704935, at *15 (S.D. Miss. Aug. 25, 2012) at *7 n.6 (following *Caldwell* because it believed it was "duty bound" to do so).

removal are resolved in favor of remand." *Id.* at 433 (citations omitted). Consistent with these principles, "when we decide whether a suit is removable under CAFA, we should determine what the case is, not what it must be if all the relief requested is to be part of the litigation." *Id.* at 432–33. Of course, this view did not carry the day in *Caldwell*, but the development of case law outside this circuit since then suggests that we should take another look.

Consistent with Judge Southwick's dissent, almost every court that has independently considered *Caldwell*'s claim-by-claim approach has either questioned or disagreed with it.[4] Indeed, every court of appeals to address the issue since *Caldwell* has rejected its approach. *See AU Optronics Corp. v. South Carolina*, \_\_\_F.3d\_\_\_, Nos. 11–254 & 11–255, 2012 WL 5265799, at \*6 (4th Cir. Oct. 25, 2012) (slip op.) (adopting "the whole-case approach and rejecting the claim-by-claim approach"); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 670 (9th Cir. 2012) (acknowledging the court's adoption of "the approach of looking at the case as a whole to determine the real party in interest, rather than the claim-by-claim approach adopted in *Caldwell*"); *Madigan*, 665 F.3d at 773–74 (referencing the courts that have questioned *Caldwell*'s analysis and holding that an action was not a removable "mass action" under CAFA, even if the state was not a real party in interest for damages claims). Each of these decisions includes convincing reasons to discard the claim-by-claim approach, a few of which I discuss here.

---

[4] *See, e.g.*, cases cited *supra* n.2. Courts in other contexts (*i.e.*, non-LCD cases) have also disagreed with *Caldwell*'s approach. *See, e.g.*, *West Virginia ex rel. McGraw v. JPMorgan Chase & Co.*, 842 F. Supp. 2d 984, 997–98 (S.D. W. Va. 2012); *Connecticut v. Moody's Corp.*, No. 3:10-CV-546, 2011 WL 63905, at \*2–3 (D. Conn. Jan. 5, 2011); *Missouri ex rel. Koster v. Portfolio Recovery Assocs., Inc.*, 686 F. Supp. 2d 942, 945–46 (E.D. Mo. 2010); *Illinois v. SDS W. Corp.*, 640 F. Supp. 2d 1047, 1052 (C.D. Ill. 2009). *But see West Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441, 449–50 (E.D. Penn. 2010) (concluding that *Caldwell*'s framework is consistent with CAFA's goals).

No. 12-60704

First, the claim-by-claim approach does not find a foothold in CAFA's text. The *Caldwell* court resorted to CAFA's legislative history to rationalize its approach. 536 F.3d at 424; *see Madigan*, 665 F.3d at 773 (reasoning that *Caldwell* "did not adopt the claim-by-claim approach based on any language in CAFA itself, nor is there any such language to be found"). Perhaps that is because CAFA's text does not suggest that, in a case in which a single plaintiff brings suit, a court should dissect the complaint to determine whether that plaintiff is the sole beneficiary of each basis for relief. This court has repeatedly cautioned against considering legislative history unless the text of a statute is ambiguous.[5] *See, e.g., Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 518–19 (5th Cir. 2004); *see also Chamber of Commerce of U.S. v. Whiting*, 131 S. Ct. 1968, 1980 (2011) ("Congress's 'authoritative statement is the statutory text, not the legislative history.'" (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) (citations omitted)). There is no ambiguity here. Moreover, even assuming *arguendo* that the legislative development of CAFA were relevant, the *Caldwell* court acknowledged that CAFA's history reveals conflicting expressions of intent. *See* 536 F.3d at 424 n.4; *see also Harvey v. Blockbuster, Inc.*, 384 F. Supp. 2d 749, 752–54 (D.N.J. 2005) (discussing CAFA's legislative history and concluding that Congress did not intend to encroach on the ability of states' attorneys general to bring *parens patriae* actions).

Compounding the absence of textual support for the claim-by-claim approach is the Supreme Court's directive that removal statutes should be "strictly construed." *Syngenta Corp. Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002). This rule undermines the argument that a case is removable under CAFA even

---

[5] I have previously expressed that I generally eschew the use of legislative history to determine a statute's intent. *See, e.g., Villas at Parkside Partners v. City of Farmers Branch, Tex.*, 675 F.3d 802, 829 n.4 (5th Cir. 2012) *reh'g en banc granted*, 688 F.3d 801 (5th Cir. 2012).

though it does not on its face satisfy the statute's requirements. *See Caldwell*, 536 F.3d at 433 (Southwick, J., dissenting). Furthermore, the rule should apply with particular force when the plaintiff is a state that sued in its own courts. Removing such a case to federal court implicates important principles of federalism, and "considerations of comity [should] make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21 n.22 (1983); *see also West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 178 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 761 (2011) ("While it is true that West Virginia voluntarily entered into its own courts to enforce its laws, it did not voluntarily consent to removal of its case to a federal court, and a federal court should be most reluctant to compel such removal, reserving its constitutional supremacy only for when removal serves an overriding federal interest.").

Finally, the impetus for *Caldwell*'s procedure to pierce the pleadings and look to the nature of each claim for relief—instead of considering the essential nature and effect of the proceedings—does not provide a compelling basis to persist with that approach. At the outset of its opinion, the *Caldwell* court recognized that "Louisiana did not raise any objections to [the district court's] decision to pierce the pleadings *or [its] procedure for doing so* . . . . As such, that issue [was] waived." *Caldwell*, 536 F.3d at 425 (emphasis added). Therefore, while the *Caldwell* court referenced the proposition that "federal courts look to the substance of the action" when determining jurisdiction, *id.* at 424 (citations omitted), the court did not consider different methods for evaluating the substance (*e.g.*, "as a whole," as other circuits have done). The procedure stemming from the waived argument in *Caldwell* does not withstand the persuasive force of the analysis in the subsequent decisions rejecting it.

15

No. 12-60704

II.

Beyond the problems of using the claim-by-claim approach for the mass action analysis, I am also concerned that its application to CAFA's general public exception will negate the exception altogether in this circuit.

CAFA tells us not only what a "mass action" *is*, but also what it is *not*. *See* 28 U.S.C. § 1332(d)(11)(B)(ii)(I)–(IV). Specifically, the general public exception provides:

> [T]he term "mass action" shall not include any civil action in which . . . all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action.

28 U.S.C. § 1332(d)(11)(B)(ii)(III). The majority opinion implicitly concludes that *Caldwell*'s approach also governs our analysis of this exception. If that is correct, then there is no question that the exception does not apply in this case because, as the majority opinion states, "there is no way that 'all of the claims' are 'asserted on behalf of the general public.'" This result is troublesome.

If we deny the applicability of the general public exception when individual consumers are parties in interest, then, as a practical matter, we will have eliminated the exception in this circuit. *Caldwell* specifies that a case is a mass action if more than 100 persons are the real parties in interest as to *any* claim for relief; and pursuant to CAFA's plain text, the general public exception cannot apply *unless* the case is a mass action. Under this framework, it is difficult to imagine a case that could be a mass action that also falls within the general public exception. *See, e.g., Entergy Miss.*, 2012 WL 3704935, at *7 n.6, *15 (following *Caldwell* and concluding that the general public exception could not apply because "[e]ven if the State has a quasi-sovereign interest in protecting Mississippi consumers . . . the presence of the discrete group of [citizens] who have a substantive legal right to receive restitution . . . means that 'all of the

16

claims in the action' are not asserted on behalf of the general public"). In essence, our precedent has created a situation in which a case cannot satisfy the criteria of both the mass action provision and the general public exception.[6]

The majority opinion states that this concern "must yield to our responsibility to apply the unambiguous, express language of a statute as written," but that misses the point. It is not CAFA's plain text that causes the problem, but rather our approach in applying the text. But for the claim-by-claim approach, we could give effect to both the mass action provision and the general public exception.[7] In CAFA, Congress defined a category of cases that are mass actions and explicitly specified that certain cases "shall not" be included in that category. Our approach in applying the statute has essentially eliminated the latter provision, contrary to well-established canons of construction that counsel against interpretations that render parts of a statute meaningless. See, e.g., White v. Black, 190 F.3d 366, 368 (5th Cir. 1999) (citation omitted) (explaining that we must "give words their ordinary meaning and . . .

---

[6] I note some commentary consistent with this concern. See Dwight R. Carswell, Comment, CAFA and Parens Patriae Actions, 78 U. Chi. L. Rev. 345, 370 (2011) (recognizing that "[l]awsuits that seek only injunctive relief or money that will go to the state treasury rather than to state citizens are not mass actions as defined by CAFA. Thus, it does not make sense to argue that these are the only lawsuits that will fall within the mass action exception.").

[7] The majority opinion also suggests that the general public exception is statutory surplasage under any analysis. In making that assertion, the majority opinion conflates the definition of "persons" in the mass action provision with "claimants" and "members of a purported class" in the general public exception. See Russell v. Law Enforcement Assistance Admin., 637 F.2d 354, 356 (5th Cir. 1981) (recognizing the "well settled rule of statutory construction that where different language is used in the same connection in different parts of a statute it is presumed that the Legislature intended a different meaning and effect," and holding that a "claimant" under one provision was not an "applicant or grantee" within the meaning of another provision (citation omitted)); cf. Mohamad v. Palestinian Auth., 132 S.Ct. 1702, 1707–08 (2012) (holding that the term "individual" in the Torture Victim Protection Act meant "natural person," but reiterating that courts should "respect Congress' decision to use different terms to describe different categories of people or things" (citation omitted)).

No. 12-60704

not render as meaningless the language of a statute"); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (1st ed. 2012) (discussing the "surplusage canon" of construction, which provides that "[i]f possible, every word and every provision is to be given effect . . . . None should be ignored. *None should be given an interpretation that causes it . . . to have no consequence.*" (emphasis added)). Therefore, we should reconsider *Caldwell*'s approach to ensure that every facet of CAFA may be given effect in our circuit.

### III.

I concur in the judgment because the majority opinion is a fair application of our precedent in this challenging context. For the reasons above, however, we should reconsider that precedent and adopt a different approach for analyzing the removal of *parens patriae* suits under CAFA.

18